**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ALBERT GARCIA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  4:22-cv-4377 |
| | § | |
| LIFE INSURANCE COMPANY | § | |
| OF NORTH AMERICA, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PRELIMINARY STATEMENT

1.      Plaintiff ALBERT GARCIA, hereinafter referred to as "Plaintiff," brings this ERISA action against the Life Insurance Company of North America Group Welfare Benefits Plan, in its capacity as Administrator of the RelaDyne, LLC Long Term Disability Plan, hereinafter referred to as "Defendant".  Plaintiff brings this action to secure all disability benefits, whether they be described as short term, long term and/or waiver of premium claims to which Plaintiff is entitled under a disability insurance policy underwritten and administered by Defendant.  Plaintiff is covered under the policy by virtue of his employment with RelaDyne, LLC.

## PARTIES

2.      Plaintiff is a citizen and resident of Lubbock, Texas.

3.      Defendant is a properly organized business entity doing business in the State of Texas.

4.      The disability plan at issue in the case at bar was funded and administered

2

by Defendant.

5.     Defendant is a business entity doing business in the Southern District of Texas. Defendant may be served with process by serving its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

6.     This court has jurisdiction to hear this claim pursuant to pursuant to 29 U.S.C. § 1132(a), (e), (f), and (g) of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1101, et seq. ("ERISA") and 28 U.S.C. § 1331, as this action involves a federal question. Specifically, Plaintiff brings this action to enforce his rights under section 502(a)(1)(B) of the Employee Retirement Income Security Act, (ERISA), which provides "[a] civil action may be brought . . . (1) by a participant or by a beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

7.     Venue in the Southern District of Texas is proper by virtue of Defendant doing business in the Southern District of Texas. Under the ERISA statute, venue is proper "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). Therefore, venue may also be proper under the third prong of ERISA's venue provision, specifically "where a defendant resides or may be found." (*Id.*) "District courts within the Fifth Circuit have adopted the reasoning outlined by the Ninth Circuit in *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245 (9th Cir. 1979*). See Sanders v.*

*State Street Bank and Trust Company*, 813 F. Supp. 529, 533 (S.D. Tex. 1993).  The Ninth Circuit, in *Varsic*, concluded that whether a defendant "resides or may be found" in a jurisdiction, for ERISA venue purposes, is coextensive with whether a court possesses personal jurisdiction over the defendant.  *Varsic*, 607 F.2d at 248."  See *Frost v. ReliOn, Inc.*, 2007 U.S. Dist. LEXIS 17646, 5-6 (N.D. Tex. Mar. 2, 2007).  Under ERISA's nationwide service of process provision, a district court may exercise personal jurisdiction over the defendant if it determines that the defendant has sufficient ties to the United States.  See *Bellaire General Hospital v. Blue Cross Blue Shield of Michigan,* 97 F.3d 822, 825-26 (5th Cir. 1996), citing *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir. 1994).  Here, Defendant is "found" within the Southern District of Texas, as it does business here, and the court has personal jurisdiction over Defendant, as it has sufficient ties to the United States.

## CONTRACTUAL AND FIDUCIARY RELATIONSHIP

8.    At all relevant times, Plaintiff has been a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in the Long-Term Disability Plan Policy No. LK-964585.

9.    Plaintiff obtained the disability policy at issue by virtue of Plaintiff's employment with RelaDyne, LLC, with coverage beginning on July 1, 2015.

10.    Said policy became effective July 1, 2015.

11.    At all relevant times, Defendant has been the claims administrator of the disability policy within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

4

12.     At all relevant times, Defendant has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

13.     Defendant has a fiduciary obligation to administer the Plan fairly and to furnish disability benefits according to the terms of the Plan.

14.     Finally, under its fiduciary duty, Defendant is required to take active steps to reduce bias ensure and ensure claims are conducted in a manner that is consistent with the interests of the claimant's.

15.     Disability benefits under the Plan have been insured in accordance and pursuant to Policy No. LK-964585 issued by Defendant.

16.     Under the terms of the policy, Defendant administered the Plan and retained the sole authority to grant or deny benefits to applicants.

17.     Because the Defendant both funds the Plan benefits and retains the sole authority to grant or deny benefits, Defendant has an inherent conflict of interest.

18.     Because of the conflict of interest described above, this Court should consider Defendant's decision to deny disability benefits as an important factor during its review in determining Defendant's wrongful denial of benefits.

## STANDARD OF REVIEW

19.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

20.     Except as stated in paragraph 21 below, benefit denials governed under ERISA are generally reviewed by the courts under a *de novo* standard of review.

_Firestone Tire & Rubber Co. v. Bruch_, 489 U.S. 101 (1989).

21.     In order for the Plan Administrator's decisions to be reviewed by this Court under an "arbitrary and capricious" standard and not a "de novo" standard, the Plan must properly give the Plan Administrator "discretion" to make said decisions within the plain language in the Plan.

22.     Plaintiff contends that the Plan fails to properly give Defendant discretion under the Policy.

23.     Further, when a Defendant violates the Department of Labor regulations, Defendant effectively forfeits its discretionary authority.

24.     When denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed de novo in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent _and_ harmless.  _Halo v. Yale Health Plan, Dir. Of Benefits & Records Yale Univ._, 819 F. 3d 42 (2nd Cir. 2016).  See also _Fessenden v. Reliance Standard Life Ins. Co._, 927 F.3d 998, 1001-02 (7th Cir. 2019) and _Slane v. Reliance Stand. Life Ins. Co._, CV 20-3250, 2021 WL 1401761 (E.D. La. Apr. 14, 2021).

25.     Defendant committed the following violations demonstrating its failure furnish a full and provide review:

i.      Inadequate notice of reasons for denial. 29 C.F.R. § 2560.503-1(g)(1)(i);
ii.     Inadequate notice of the information needed to perfect Plaintiff's appeal. 29 C.F.R. § 2560.503-1(g)(1)(iii);
iii.    Failure to follow Defendant's own claims procedures 29 C.F.R. §

6

2560.503-1(b);

iv.   Failure to adopt guidelines to ensure that similarly situated claims are
      administered correctly and consistently. 29 C.F.R. § 2560.503-1(b)(5);

v.    Failure to administrative Plaintiff's claim consistently 29 C.F.R. §
      2560.503-1(b)(5);

vi.   Failure to provide requested relevant documents timely. 29 C.F.R. §
      2560.503-1(h)(2)(iii);

vii.  Failure to describe the guidelines and protocols relied upon. 29 C.F.R. §
      2560.503-1(g)(1)(v) and 29 C.F.R. § 2560.503-1(j)(5);

viii. Failure to obtain the review of appropriate medical professional. 29 C.F.R.
      § 2560.503-1(h)(3)(iii);

ix.   Failure to obtain an appeal review of a different non-subordinate medical
      professional. 29 C.F.R. § 2560.503-1(h)(3)(v);

x.    Failure to obtain an appeal review that does not defer to the prior
      determination. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xi.   Failure to obtain an appeal review that is conducted by a different non-
      subordinate individual. 29 C.F.R. § 2560.503-1(h)(3)(iii);

xii.  Failure to give a claimant an opportunity to review and refute the report of
      a reviewing physician obtained during the appeal review. 29 C.F.R. §
      2560.503-1(h)(4);

xiii. Failure to take into account all comments, documents, records, and other
      information submitted to the claimant or by the claimant relating to the
      claim. 29 C.F.R. § 2560.503-1(h)(2)(iv).


26.   Defendant's violations of the regulations were not inadvertent or harmless.

27.   Plaintiff contends that because Defendant failed to furnish a full and fair

review, Defendant has relinquished its discretionary authority under the Plan.

28.   Further, Defendant has a fiduciary obligation to administer the Plan fairly

and to furnish disability benefits according to the terms of the Plan.

29.   In Texas, for disability insurance policies, certificates or riders offered,

issued, renewed or delivered on or after February 1, 2011 said "discretionary clauses"

are prohibited under 1701.062(a) Texas Insurance Code.

30.   Further, for disability insurance policies issued prior to February 1, 2011 that

do not contain a renewal date, said discretionary clause prohibition applies after June 1,

7

2011 upon any rate increase or any change, modification or amendments on or after June 1, 2011.

31.     Plaintiff contends that the Plan fails to give the Defendant said discretion as said discretionary language is prohibited under 1701.062(a) Texas Insurance Code.

32.     Pursuant to *Ariana M. v. Humana Health Plan of Texas*, 884 F.3d. 246, 249 (5th Cir. 2018), (overruling *Pierre v. Conn. Gen. Life Ins. Co.*, F2d. 1562 (5th Cir. 1991), the 5th Circuit has recently held that absent a valid grant of discretion, both the "interpretation of plan language" and "factual determinations" are to be reviewed by the court under a de novo standard.  Therefore, pursuant to *Ariana*, the court should review this matter de novo.

33.     ERISA does not preempt state bans on discretionary clauses because of the "savings clause."  ERISA preempts "any and all State laws insofar as they … relate to any employee benefit plan." The "savings clause," however, preserves "any law … which regulates insurance…." To fall within the savings clause, a state law must: Be "specifically directed toward entities engaged in insurance" and "substantially affect the risk pooling arrangement between the insurer and the insured."  *Kentucky Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003).

34.     Defendant's discretionary ban is therefore not preempted by ERISA and the Standard of Review for the Court in reviewing this action is de novo.

## ADMINISTRATIVE APPEAL

35.     Plaintiff is a 61-year-old man previously employed by RelaDyne, LLC as a "Truck Driver."

36.     Truck Driver is classified under the Dictionary of Occupational Titles as having a Heavy exertional level.  This occupation also has an SVP of 4 and is semi- skilled work.

37.     This occupation was very demanding in that it required Plaintiff to transport goods from one location to another, load the vehicle, abide by traffic laws and ensure safe unloading and delivery at their destination.

38.     Due to Plaintiff's disabling conditions, Plaintiff ceased actively working on April 9, 2019.

39.     Plaintiff alleges that he became disabled on April 10, 2019.

40.     Plaintiff filed for short term disability benefits with Defendant.

41.     Short term disability benefits were approved and paid.

42.     Plaintiff filed for long term disability benefits through the Plan administered by the Defendant.

43.     The Plan defines "Disability" or "Disabled" as follows:

*"Disability" or "Disabled" means the Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:*

*1.      unable to perform the material duties of his or her Regular Occupation; and*

*2.      unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.*

*After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:*

*1.      unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and*

*2.      unable to earn 60% or more of his or her Indexed Earnings.*

The Insurance Company will require proof of earnings and continued Disability.

9

44.     The Plan defines "Regular Occupation" as follows:

*"Regular Occupation" means the occupation the Employee routinely performs at the time the Disability begins.  In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location.*

45.     Long Term Disability benefits were approved from July 9, 2019 to July 8, 2021.

46.     The Plan provides for monthly benefits of $2,616.08.

47.     On June 2, 2021, Defendant terminated Plaintiff's long term disability benefits.

48.     Defendant's termination letter said, "We are in no way indicating that you do not experience symptoms due to your condition; however, on our review of the available medical information, we determined that a functional loss is not present at a level of severity to preclude you from performing any occupation." under the Any Occupation definition and allowed Plaintiff 180 days to appeal this decision.

49.     Defendant's termination letter failed to consider Plaintiff's restrictions, limitations, and inability to perform necessary vocational requirements of his own or any occupation related to his medical conditions.

50.     Defendant's termination letter failed to state what specific information was missing and/or necessary for Plaintiff to perfect his appeal.  On this front, Defendant's letter states only that, "If there is additional information, documents, or records that you believe would impact this benefit decision please submit it to us for consideration."

51.     On January 4, 2022, Plaintiff pursued his administrative remedies set forth in the Plan by requesting administrative review of the denial of benefits.

52.     Plaintiff timely perfected his administrative appeal pursuant to the Plan by sending letter requesting same to the Defendant.

53.     Plaintiff submitted additional information including medical records to show that he is totally disabled from the performance of both his own and any other occupation as defined by the terms of the Plan.

54.     Additionally, the Social Security Administration issued a fully favorable decision on Plaintiff's claim for disability benefits under Title II and Title XVI of the Social Security Act, finding that Plaintiff is "disabled" during the relevant time period. Notably, the SSA's definition of disability is significantly more restrictive than Defendant's as SSA requires the claimant to be unable to work in "any occupation in the National Economy."

55.     Defendant was provided documentation of the Social Security Administration's finding that Plaintiff was found to be totally disabled under Title II and Title XVI of the Social Security Act.

56.     On or about May 27, 2021, Defendant's internal consultant, Perry Glaze, MS, CRC, rehabilitation specialist, performed a paper review of Plaintiff's claim file.

57.     On or about January 22, 2022, Defendant's paid consultant, John Z. Zheng, DO (Dr. Zheng), physical medicine and rehabilitation and pain medicine, performed a peer review of Plaintiff's claim file.

58.     On or about February 2, 2022, Dr. Zheng prepared an addendum to his peer review of Plaintiff's claim file.

59.   On or about February 10, 2022, Defendant's paid consultant, Edwin Soriano, M.D. (Dr. Soriano), internal medicine, performed a peer review of Plaintiff's claim file.

60.   On or about March 10, 2022, Defendant's internal consultant, Kristina DeSantis, MA, CRC, rehabilitation specialist, performed a paper review of Plaintiff's claim file.

61.   On or about May 12, 2022, Dr. Zheng prepared another addendum to his peer review of Plaintiff's claim file.

62.   On or about May 19, 2022, Dr. Soriano prepared an addendum to his peer review of Plaintiff's claim file.

63.   On or about June 30, 2022, Dr. Zheng prepared yet another addendum to his peer review of Plaintiff's claim file.

64.   On or about July 25, 2022, Defendant's paid consultant, Kanishka Wijegunaratne, M.D., internal medicine, performed a peer review of Plaintiff's claim file.

65.   On or about July 29, 2022, Defendant's internal consultant, Stacey Nidositko, MS, CRC, rehabilitation specialist, performed a paper review of Plaintiff's claim file.

66.   On or about August 18, 2022, Defendant's internal consultant, Amy French, MS, CRC, performed a paper review of Plaintiff's claim file.

67.   Defendant's peer reviews of Plaintiff's file are unreliable and unreasonable as a basis for denial because:

a.   The reviewers' opinions were infected by conflict and bias;

b.      The reviewers' conclusions lack foundation and are conclusory;

c.      The reviewers failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.      The reviewers lacked appropriate qualifications to comment on Plaintiff's conditions;

e.      The reviewers never examined Plaintiff in-person, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.      The reviewers failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.      The reviewers failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

h.      The reviewers based their opinions on a summary reports of other underqualified opinions; and

i.      The reviewers' conclusions were inconsistent with the weight of the evidence.

68.     There is an indication that a "A. Pedranti, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

69.     There is an indication that a "Colleen Rodriguez, BSN, RN," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

70.     There is an indication that a "Troy Sargent, RN, CCM," reviewed Plaintiff's claim file, but Defendant failed to provide Plaintiff with said review.

71.     There is an indication that a "Melissa Stout, RN," reviewed Plaintiff's claim

13

file, but Defendant failed to provide Plaintiff with said review.

72.     Defendant's consultants completed their reports without examining Plaintiff.

73.     On May 17, 2021, Defendant paid its expert, Dmitry Golovko, M.D., MPH, (Dr. Golovko), occupational medicine, to conduct a defense medical examination "DME" on Plaintiff.

74.     This examination was unreliable and not "independent" as evidenced by:

a.     Dr. Golovko's opinion was infected by conflict and bias;

b.     Dr. Golovko's conclusions lack foundation and are conclusory;

c.     Dr. Golovko failed to consider the degenerative nature of Plaintiff's condition(s) and the lack of significant improvement;

d.     Dr. Golovko lacked appropriate qualifications to comment on Plaintiff's conditions;

e.     Dr. Golovko failed to spend an adequate amount of time examining Plaintiff, which is particularly relevant, given the complexity of Plaintiff's conditions and treatment;

f.     Dr. Golovko failed to consider all relevant information, including Plaintiff's relevant own occupational demands;

g.     Dr. Golovko failed to acknowledge that medications neither effectively resolved his pain nor were appropriate for long-term treatment of Plaintiff;

h.     Dr. Golovko based his opinion on a summary reports of other underqualified opinions; and

i.     Dr. Golovko's conclusions were inconsistent with the weight of the

14

evidence.

75.     Defendant notified Plaintiff that Defendant upheld its original decision to deny/terminate Plaintiff's claim for long term disability benefits.

76.     Defendant also notified Plaintiff that Plaintiff had exhausted his administrative remedies.

77.     Defendant, in its final denial, discounted the opinions of Plaintiff's treating physicians, among others, and the documented limitations from which Plaintiff suffers including the effects of Plaintiff's impairments on his ability to engage in work activities.

78.     Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

## **MEDICAL FACTS**

79.     Plaintiff suffers from multiple medical conditions resulting in both exertional and nonexertional impairments.

80.     Plaintiff suffers from coronary artery disease (CAD); hypertension (HTN); angina; chronic bronchitis; chronic lumbar radiculopathy; hip avascular necrosis (AVN) with left hip pain; left hip arthroplasty; chronic L5 pain; hyperlipidemia; and gastroesophageal reflux disease (GERD).

81.     Treating physicians document continued chronic pain, radicular symptoms, as well as decreased range of motion and weakness.

82.     Plaintiff's treating physicians have opined that Plaintiff is unable to work.

83.     Plaintiff's treating physicians disagree with Defendant's hired peer reviewers.

84.     Plaintiff's multiple disorders have resulted in restrictions in activity, have severely limited Plaintiff's range of motion, and have significantly curtailed his ability to engage in any form of exertional activity.

85.     Physicians have prescribed Plaintiff with multiple medications, including narcotic pain relievers, in an effort to address his multiple symptoms.

86.     However, Plaintiff continues to suffer from breakthrough pain, discomfort, and limitations in functioning, as documented throughout the administrative record.

87.     Plaintiff's documented pain is so severe that it impairs his ability to maintain the pace, persistence and concentration required to maintain competitive employment on a full-time basis, for an 8-hour day, day after day, week after week, month after month.

88.     Plaintiff's medications cause additional side effects in the form of sedation and cognitive difficulties.

89.     The aforementioned impairments and their symptoms preclude Plaintiff's performance of any work activities on a consistent basis.

90.     As such, Plaintiff has been and remains disabled per the terms of the Plan and has sought disability benefits pursuant to said Plan.

91.     However, after exhausting his administrative remedies, Defendant persists in denying Plaintiff his rightfully owed disability benefits.

**DEFENDANT'S CONFLICT OF INTEREST**

92.     At all relevant times, Defendant has been operating under an inherent and structural conflict of interest as Defendant is liable for benefit payments due to Plaintiff and each payment depletes Defendant's assets.

16

93.     Defendant's determination was influenced by its conflict of interest.

94.     Defendant's reviewing experts are not impartial.

95.     Upon information and belief, Defendant's peer reviewers have conducted reviews in connection with numerous other individuals insured by Defendant.

96.     Defendant knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only insurance companies and never individual claimants.

97.     Upon information and belief, Defendant pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for claimants under Defendant's Plan(s).

98.     Upon information and belief, Defendant's reviewing experts receive financial incentive to proffer opinions aiding in Defendant's denial of claims.

99.     Defendant has failed to take active steps to reduce potential bias and to promote accuracy of its benefits determinations.

## COUNT I:

## WRONGFUL DENIAL OF BENEFITS UNDER ERISA, 29 U.S.C. § 1132

100.    Plaintiff incorporates those allegations contained in paragraphs 1 through 99 as though set forth at length herein.

101.    Defendant has wrongfully denied disability benefits to Plaintiff in violation of Plan provisions and ERISA for the following reasons:

a.      Plaintiff is totally disabled, in that he cannot perform the material duties of his own occupation, and he cannot perform the material duties of any other

occupation which his medical condition, education, training, or experience would reasonably allow;

b.      Defendant failed to afford proper weight to the evidence in the administrative record showing that Plaintiff is totally disabled;

c.      Defendant's interpretation of the definition of disability contained in the policy is contrary to the plain language of the policy, as it is unreasonable, arbitrary, and capricious; and

d.      Defendant has violated its contractual obligation to furnish disability benefits to Plaintiff.

## COUNT II:  ATTORNEY FEES AND COSTS

102.    Plaintiff repeats and realleges the allegations of paragraphs 1 through 101 above.

103.    By reason of the Defendant's failure to pay Plaintiff benefits as due under the terms of the Plan, Plaintiff has been forced to retain attorneys to recover such benefits, for which Plaintiff has and will continue to incur attorney's fees.  Plaintiff is entitled to recover reasonable attorney's fees and costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. §1132(g)(1).

WHEREFORE, **Plaintiff demands judgment for the following:**

A.      Grant Plaintiff declaratory relief, finding that he is entitled to all past due long term disability benefits yet unpaid;

B.      Order Defendant to pay past due long term disability benefits retroactive to July 9, 2021 through the present in the monthly amount specified in the Plan and subject

18

to such offsets as are permitted in the Plan, plus pre-judgment interest;

C.     Order Defendant to remand claim for future administrative review and continue to make future long term disability benefits in the monthly amount specified in the Plan and subject to such offsets as are permitted in the Plan until such time as Defendant makes an adverse determination of long-term disability consistent with ERISA and Plaintiff's entitlements under the Plan;

D.     Order Defendant to pay for the costs of this action and Plaintiff's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g); and

E.     For such other relief as may be deemed just and proper by the Court.


Dated:  Houston, Texas
        December 18, 2022

                          Respectfully submitted,

                          MARC WHITEHEAD & ASSOCIATES,
                          ATTORNEYS AT LAW L.L.P.


                          By:     ____/s/ Selina Valdez_____
                                  Selina Valdez
                                      Tex. Bar No. 24121872
                                      Fed. I.D. No. 3633062
                                      selina@marcwhitehead.com
                                  Marc S. Whitehead
                                      Tex. Bar No. 00785238
                                      Fed. I.D. No. 15465
                                      marc@marcwhitehead.com
                                  J. Anthony Vessel
                                      Tex. Bar. No. 24084019
                                      Fed. I.D. No. 1692384
                                      anthony@marcwhitehead.com
                                  Britney Anne Heath McDonald
                                      Tex. Bar. No. 24083158
                                      Fed. I.D. No. 2621983
                                      britney@marcwhitehead.com

19

Madison Tate Donaldson
    Tex. Bar No. 24105812
    Fed. I.D. No. 3151467
    madison@marcwhitehead.com
403 Heights Boulevard
Houston, Texas 77007
Telephone: 713-228-8888
Facsimile: 713-225-0940
ATTORNEY-IN-CHARGE
FOR PLAINTIFF,
ALBERT GARCIA